Kate M. Powers, Esq. Informal Opinion Guy K. Krogh, Esq. No. 2005-9 Thaler Thaler 309 North Tioga Street P.O. Box 266 Ithaca, NY 14851-0266
Dear Ms. Powers and Mr. Krogh:
In Thaler Thaler's capacity as attorneys for the Town of Lansing, you have asked several questions relating to the enforcement of Agriculture and Markets Law ("A.M.L.") § 121 and the Town of Lansing Dog Control Ordinance. Specifically, you sought the opinions of this office on the following:
 (1) whether Thaler Thaler may represent the Town of Lansing in civil or criminal proceedings brought pursuant to A.M.L. § 121;
 (2) whether Thaler Thaler may represent the Town of Lansing in proceedings brought pursuant to section 8 of the Town of Lansing Dog Control Ordinance;
 (3) whether a town may intervene in civil proceedings filed by private citizens pursuant to A.M.L. § 121; and
 (4) whether a Town Justice may, consistent with A.M.L. § 121, order a dog owner to pay restitution or reparations to the victim of a dog attack.
A.M.L. § 121 addresses dangerous dogs exclusively; the town ordinance applies to several actions and behaviors related to dog ownership, including the ownership of dangerous dogs.[1] See Town of Lansing Dog Control Ordinance § 2.
I. Representation of the Town Under Agriculture Markets LawArticle 7
A.M.L. § 121 is part of Article 7 of the Agriculture and Markets Law. Article 7 provides "for the licensing and identification of dogs, the control and protection of the dog population and the protection of persons, property, domestic animals and deer from dog attack and damage." A.M.L. § 106. To enforce Article 7, municipal dog control officers must commence an action against a dog owner who has violated any of eight statutory requirements, including those pertaining to the confinement, restraint, or destruction of dangerous dogs. A.M.L. § 119(1)-(2). With respect to dangerous dogs, A.M.L. § 121 underscores the requirement that a dog control officer commence a proceeding in municipal court if he or she has "reason to believe [a] dog is a dangerous dog." A.M.L. § 121(3). In addition to dog control officers, the statute permits "any person" — defined as "any individual, corporation, partnership, association or other organized group of persons, municipality, or other legal entity," A.M.L. § 108(17) — to file a complaint in municipal court. A.M.L § 121(4).
For any one of the eight violations listed in A.M.L. § 119(1), Article 7 allows municipalities to choose whether to seek civil penalties or to prosecute actions as violations under the Penal Law. A.M.L. § 119(2). If a municipality seeks only a civil penalty, the penalty must not exceed $25 for the first offense in a five-year period, $50 for the second, and $100 for the third. A.M.L. § 119(2)(b). Likewise, actions prosecuted pursuant to the Penal Law for first offenses may result in a fine of not more than $25; individuals who have violated Article 7 once or twice in the five years preceding a new enforcement action face fines up to $50 and $100, respectively. A.M.L. § 119(2)(a). A.M.L. § 121 provides that additional civil penalties may be imposed against owners of dogs who bite and injure people, service dogs, guide dogs, or hearing dogs, while other acts and omissions may expose dog owners to misdemeanor criminal prosecutions. A.M.L. § 121(7)-(8), (9)-(10).
Article 7 thus expressly permits municipalities to bring actions pursuant to A.M.L. §§ 119 and 121. The attorney for a town may therefore represent the town in municipal court actions in which civil penalties are sought. See Town Law § 65(1) (town board may direct any town officer to institute or appear in any action or legal proceeding in name of town); id. § 20(2) (town board may establish office of town attorney or employ counsel as necessary).
Where a municipality elects to prosecute a violation as a criminal offense, however, we conclude that a town attorney's authority is limited. Article 7 infractions may be prosecuted as "violations" under the Penal Law. A.M.L. § 119(2). "Violations" are offenses, other than traffic infractions, that carry a maximum sentence of fifteen days. Penal Law § 10.00(3). The Penal Law defines an "offense," in turn, as
conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state or by any law, local law or ordinance of a political subdivision of this state, or by any order, rule or regulation of any governmental instrumentality authorized by law to adopt the same.
Penal Law § 10.00(1). Violations are therefore a subset of offenses under the Penal Law; prosecutions for these offenses are subject to criminal procedure laws, even when initiated in the local criminal courts. See Op. Att'y Gen. (Inf.) No. 91-3; C.P.L. §§ 1.20(39), 10.10, 10.30.
County Law § 700 requires that the district attorney for a particular county prosecute all crimes and offenses cognizable by the courts of that county. See County Law § 700(1). The district attorney must "retain the ultimate, nondelegable responsibility for prosecuting all crimes and offenses," Soddano,86 N.Y.2d at 728, but he may consent to the prosecution of petty crimes and offenses by municipal or even private attorneys, as long as he is "kept aware of all of the criminal prosecutions in the county."Id. (citing People v. Van Sickle, 13 N.Y.2d 61, 62-63 (1963) (district attorney "must set up a system whereby he knows of all the criminal prosecutions in his county and either appears therein in person or by assistant or consents to appearance on his behalf by other public officers or private attorneys")); see also Op. Att'y Gen. (Inf.) No. 98-14 (with proper grant of authority from district attorney, county attorney may prosecute violations of county's mechanical trade laws); Op. Att'y Gen. (Inf.) No. 97-52 (with proper grant of authority from district attorney, village officials may prosecute violations of village's local laws); Op. Att'y Gen. (Inf.) No. 90-8 (with proper grant of authority from district attorney, town attorney may prosecute certain violations of General Municipal Law § 136).
Therefore, we conclude that an attorney for a town may bring and try civil actions pursuant to A.M.L. §§ 119 and 121 on the town's behalf. Thaler Thaler, as attorneys for the Town of Lansing, may not, however, prosecute criminal violations under Article 7 without being duly authorized by the Tompkins County District Attorney, which authorization may assign duties to Thaler Thaler but may not divest the District Attorney of the ultimate discretionary judgment to initiate or resolve prosecutions. SeeMatter of Schumer v. Holtzman, 60 N.Y.2d 46, 53-54 (1983) (voiding an ultra vires delegation by a district attorney of her "fundamental responsibilities").
II. Representation of the Town Under Local Ordinance
Although state law generally preempts the field of dog control,see Op. Att'y. Gen. 83-F12, Article 7 of the Agriculture and Markets Law extends some legislative power to municipalities. A.M.L. § 124 provides that a municipality "may enact a local law or ordinance upon the keeping or running at large of dogs and the seizure thereof, provided no municipality shall vary, modify, enlarge or restrict the provisions of [Article 7] relating to identification, licensing, rabies vaccination and euthanization." A.M.L. § 124(1). Municipalities may also adopt their own programs for the control of dangerous dogs, "provided . . . that no such program shall be less stringent" than Article 7 itself or regulate such dogs in a manner that is specific as to breed. A.M.L. § 107(5).
Municipal ordinances enacted pursuant to Article 7 may subject violators either to civil "penalties" or to "fine[s] or imprisonment." A.M.L. § 124(2). You note in your letter that the Town of Lansing appears to have opted to provide only for criminal sanctions. Section 8 of the Town of Lansing Dog Control Ordinance provides:
 A violation of this law shall constitute a violation as defined in the Penal Law of the State of New York, and shall be punishable by a penalty[2] of not more than $25.00 for the first violation, not more than $50.00 for the second violation, and not more than $75.00 for the third and all subsequent violations, or by imprisonment for a term not to exceed five days for each violation. These penalties shall be in addition to any other penalty provided by law.
As explained above, violations under the Penal Law are subject to the Criminal Procedure Law and must be prosecuted either by the district attorney or by someone acting with the authorization of the district attorney. Because Lansing's Dog Control Ordinance provides only for criminal penalties, we conclude that Thaler 
Thaler, as attorneys for the Town of Lansing, may not prosecute dog owners for violations pursuant to section 8 of the ordinance without the authorization of the Tompkins County District Attorney. Without such authority, an attorney for a town may bring only those civil actions provided in A.M.L. §§ 119 and 121.
III. Town Intervention in Private Actions
Pursuant to A.M.L. § 121, any individual who complains of an attack by a dog has the right to commence a proceeding in municipal court; the court, in turn, must hold a hearing on the complaint to determine whether the dog is dangerous. A.M.L. § 121(3) and (4); see also Op. Att'y Gen. (Inf.) No. 79-125 (private individual may file accusatory information under local dog control ordinance that provides for criminal penalties). A dog control officer aware of a dog attack who believes the dog in question is dangerous has the duty to initiate a court proceeding himself. A.M.L. § 121(3) and (4).
You have asked whether a town may intervene in a proceeding brought by a private individual pursuant to A.M.L. § 121. The proceeding described in A.M.L. § 121 provides for expedited adjudication in two stages: (1) the court must determine "immediately" whether there is probable cause to believe a dog is dangerous, and, if such probable cause exists, must order the dog's seizure; (2) regardless of the probable cause determination, the court must hold a hearing within five days after a complaint is filed (on written notice of not less than two days to the owner of the dog in question) to determine whether the dog is dangerous. A.M.L. § 121(4).
Because A.M.L. § 121 provides for expedited proceedings, complaints under the statute are considered special proceedings.See David D. Siegel, New York Practice § 547 (3d ed. 1999) (characterizing A.M.L. § 121 as authorizing special proceeding). C.P.L.R. § 401 governs intervention in special proceedings, and provides that a party may intervene in such a proceeding by leave of the court. See C.P.L.R. § 401; see also Siegel, supra, § 551 (with court's leave, intervention available in special proceeding). We therefore conclude that, under the authority of C.P.L.R. § 401, the Town of Lansing may seek the court's leave to intervene in any private proceeding brought pursuant to A.M.L. § 121. Whether the Town will be allowed to intervene in a particular case will be determined by the court.
IV. Restitution and Reparations
Finally, you ask whether a Town Justice may, in a proceeding brought pursuant either to A.M.L. § 121 or to the Town of Lansing Dog Control Ordinance, order a dog owner to pay restitution or reparations to the victim of a dog attack.
You note that A.M.L. § 121 does not provide specifically for restitution or reparations, and question whether, in a special proceeding brought pursuant to A.M.L. § 121(4), a court could order such relief. A.M.L. § 121 expressly preserves any common law or statutory claims available to victims of dangerous dogs; the enforcement provisions set forth in A.M.L. § 121 are in addition to any remedies available based on those claims. See A.M.L. § 121(12). Thus, victims may seek — and a Town Justice may order restitution or other damages without running afoul of the Agriculture and Markets Law.
Likewise, A.M.L. § 125, which mandates county indemnification for damage done by dogs to domestic animals, see A.M.L. § 125(1), explicitly provides for restitution in certain circumstances. Specifically, it requires that the owner of a dog causing such damage must reimburse the county for any indemnification outlays.See A.M.L. § 125(3).
Moreover, where a dog owner is prosecuted criminally, the court can require restitution:
 [i]n addition to any of the dispositions authorized by [the Penal Law], the court shall consider restitution or reparation to the victim of the crime and may require restitution or reparation as part of the sentence imposed upon a person convicted of an offense, and . . . require the defendant to make restitution of the fruits of his or her offense or reparation for the actual out-of-pocket loss caused thereby.
Penal Law § 60.27(1); see also Penal Law § 60.00(1) (sentences prescribed by Penal Law apply to offenses defined outside Penal Law).
Therefore, we conclude that, in both civil and criminal matters brought pursuant to both A.M.L. § 121 and the Town of Lansing Dog Control Ordinance, a town justice may order restitution, reparations, or other damages to a dog attack victim.
The Attorney General issues formal opinions only to officers and departments of State government. Thus, this is an informal opinion rendered to assist you in advising the municipality you represent.
Very truly yours,
KATHRYN SHEINGOLD
Assistant Solicitor General In Charge of Opinions
[1] A "dangerous dog" is one that "(a) without justification attacks a person and causes physical injury or death, or (b) poses a serious and unjustified imminent threat of harm to one or more persons, or (c) without justification attacks a service dog, guide dog or hearing dog and causes physical injury or death." A.M.L. § 108(24).
[2] You have indicated that you believe that the "penalty" described in the ordinance amounts to a fine under the Penal Law.